UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: LAKEISHA D. KINDS                                        CASE NO. 10-12502-DWH
                                                                                  CHAPTER 13

OPINION

On consideration before the court is a motion to reinstate filed by the debtor, LaKeisha D. Kinds; an objection to the motion to reinstate having been filed by Lee Moore Mobile Homes, (hereinafter "Moore"); on proof in open court; and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A), (B), and (O).

II.

The above captioned bankruptcy case was filed by the debtor on May 20, 2010, and dismissed on June 8, 2010, because the debtor failed to file the required documentation. The debtor is no stranger to the bankruptcy court. On April 16, 2008, she and her husband, William Kinds, filed a Chapter 7 bankruptcy petition, (No. 08-11496), but only her husband received a discharge on March 8, 2010. The debtor, using the name, Keisha D. Hilliard, also filed an earlier Chapter 7 case, (No. 01-10951), on February 20, 2001, and received a discharge in that case on June 26, 2001. The court can only surmise that the debtor did not receive a discharge in the 2008

case because it was filed within eight years of the filing of the 2001 case. *See* 11 U.S.C. §727(a)(8).

### III.

On April 14, 2008, only two days before the filing of the 2008 Chapter 7 bankruptcy case, the debtor and her husband, (hereinafter collectively "lessees" or "Kinds"), entered into a lease agreement with Moore applicable to a 2001 Spiral mobile home, Serial No. SIAL9775AB. The term of this lease was for a period of 60 months and required a monthly installment payment of $533.00, which included a monthly insurance premium of $36.00. The lessees were required to pay the personal property taxes which accrued each year on the mobile home. The Lease Agreement and Consumer Lease Disclosure Statement indicated that the lessees were given a $7,000.00 net allowance on the transaction which either represented the value of a trade-in or a cash down payment. Significantly, the lessees were given the option of terminating the lease at any time. If the lessees elected to terminate, Moore was entitled to only the lease payments that were due prior to the date of the termination plus accrued collection charges, if any.

The lease provided that Moore would retain ownership of the leased property, and that the title to the mobile home, during the term of the lease, would always remain with Moore. However, despite this provision, Moore executed an Application for Certificate of Title which designated the Kinds as owners of the mobile home. Moore indicated that this document was executed in this fashion in order to enable the Kinds to acquire insurance and to facilitate the payment of the personal property taxes. The debtor did not dispute this explanation.

2

Moore filed a motion seeking relief from the automatic stay in the Kinds Chapter 7 case, (No. 08-11496). An order lifting the automatic stay and abandoning the mobile home that they had leased from Moore was entered by the court on March 2, 2010.

The hearing on the motion to reinstate the current Chapter 13 case was scheduled on August 25, 2010. At that time, the Kinds had made only one payment under the lease since December, 2009. As such, they were seven months delinquent in their monthly installments of $533.00, totaling $3,731.00. In addition, they failed to pay the personal property taxes for 2008, 2009, and 2010, totaling $1,370.01. Therefore, their lease delinquency was $5,101.01.

Although the hearing was scheduled to address the debtor's motion to reinstate, the critical issue between these parties is whether the lease agreement is a true lease or whether it is a secured transaction.

IV.

Significantly, §75-1-201(37)(B), Miss. Code Ann., provides as follows:

> (B) Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and
>   (i) The original term of the lease is equal to or greater than the remaining economic life of the goods,
>   (ii) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods,
>   (iii) The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or
>   (iv) The lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

3

Section 75-1-201(37)(C), Miss. Code Ann., lists several factors that, even though they may be included in a contractual agreement, they do not automatically mean that the transaction is a secured transaction.

The court has applied these two code sections to the agreement that was executed between Moore and the Kinds and concludes that the agreement is indeed a true lease and not a security agreement. While this was a "close call," the primary factors are the following:

1)  The Kinds had the ability to terminate the lease agreement at any time after making the first monthly payment, and would be liable only for delinquent payments up to the date of termination, plus any accrued collection costs.

2)  The Kinds were not given an option to purchase the leased property for a nominal consideration at the conclusion of the lease term.

3)  The lease agreement provided that Moore would retain ownership of the leased property, and that the title, during the term of the lease, would remain with Moore. The court obviously recognizes that the Application for Certificate of Title was executed by Moore in favor of the Kinds, but this was done merely to facilitate the payment of the ad valorem taxes, as well as, to assist the Kinds in obtaining insurance coverage. At no time did the debtor dispute that Moore was the owner of the property.

4)  The lease agreement provided that the Kinds had no right to sell, transfer, assign, sublease, or in any way encumber the leased property. These rights were specifically reserved to Moore.

5)  Although the Lease Agreement and Consumer Lease Disclosure Statement indicated that the Kinds were given a net allowance of $7,000.00, which, as noted hereinabove, was either a trade-in, or cash down payment, this is significantly offset by the fact that the Kinds failed to make the lease payments and the personal property tax payments totaling $5,101.01. The Kinds' past performance regarding the lease obligations is indicative that their future performance will likewise be unsatisfactory.

6)  Considering that the lease term is for a period of 60 months or five years, the court concludes that the economic life of the mobile home exceeds the original term of the lease.

7) Since the Kinds can terminate the lease at any time, they are not required to renew the lease for the remaining economic life of the mobile home.

8) On Schedule G - Executory Contracts and Unexpired Leases, the debtor listed the agreement as a residential lease in her current case, and both the debtor and her husband listed the agreement as a lease in the 2008 Chapter 7 case. Moore was not scheduled as a secured creditor in either case.

The court has considered the decision authored by Judge John Waites in *In re Parker*, 363 B.R. 769 (Bankr. D. S.C. 2006), which indicates that the determination of whether an agreement is a true lease or a security agreement should first focus on whether the lessees have the right to terminate the agreement at will. Then, the appropriate facts of each case should be compared to the factors that would be indicative of a secured transaction set forth in Uniform Commercial Code §75-1-201(37)(B)(i)-(iv). *Id.* at 773. This court has undertaken this exercise as set forth hereinabove.

In order to retain the mobile home as a result of the court's determination that the agreement is a lease, the debtor, would have to promptly cure the defaults that are presently outstanding, as well as, provide adequate assurance of future performance under the lease. See, 11 U.S.C. §365(b)(1). According to her attorney, she cannot do this, so the lease agreement must be deemed rejected. As a consequence, Moore will be authorized to repossess the mobile home at a mutually agreeable time.

V.

Moore has indicated that if the mobile home can be recovered, Moore has no further objection to the debtor's motion to reinstate. No other creditors objected to this requested relief. If Moore has an additional claim against the debtor, it should be treated as an unsecured claim

upon reinstatement. Likewise, any claim that the debtor has against Moore would be considered property of her bankruptcy estate.

In summary, the court makes the following determinations which will be incorporated into a separate order to be entered contemporaneously herewith:

1) The agreement executed by Moore in favor of the debtor and her husband is a true lease agreement. Since it cannot be feasibly assumed, it must be deemed rejected and Moore afforded an opportunity to recover possession of the mobile home at a mutually convenient time. The debtor is specifically directed not to interfere, impede, or hinder the repossession effort.

2) Should the debtor wish to pursue the above captioned bankruptcy case, it will be reinstated since the only objection to reinstatement has now been resolved.

3) Should Moore have additional claims against the debtor, an appropriate proof of claim should be filed with this court within a period of 30 days following the repossession of the subject mobile home.

4) Should the debtor have a claim against Moore, it would be considered property of this bankruptcy estate.

5) This opinion resolves the debtor's motion to reinstate, as well as, Moore's objection thereto.

This the 29th day of October, 2010.

DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE